**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**OCALA DIVISION**

**HAMID RAZI, an individual**

     **Plaintiff,**

**v.**                                                            **Case No: 5:12-CV-80-Oc-34PRL**

**REZA RAZAVI, HOSSEIN RAZAVI,**
**RAZBRO REAL ESTATE**
**INVESTMENTS INC, RAZBRO**
**CORPORATION, PAUL H NESSLER,**
**JR and DOES**

     **Defendants.**

---

**REPORT AND RECOMMENDATION**[1]

     The Razavi Defendants (Reza Razavi, Hossein Razavi, Razbro Real Estate, and Razbro Corporation), collectively, and Paul Nessler, Jr., individually, have filed motions to dismiss the Second Amended Complaint.  (Docs. 56 & 57).  Plaintiff has responded to both motions (Docs. 59 & 60), and at the request of the Court, Defendants have filed reply memoranda (Docs. 70 & 71).  On August 27, 2012, the District Judge referred this matter to the undersigned for a report and recommendation regarding an appropriate resolution of the motions. (Doc. 62).  For the reasons discussed below, the motions should be granted in part and denied in part.

**I.        BACKGROUND**[2]

     This action arises out of ten transactions in which Plaintiff, Hamid Razi ("Razi")

---

[1] Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

[2]  The factual background is taken from the allegations of the Second Amended Complaint ("SAC"), which this Court accepts as true for purposes of this motion.

purchased vacant real property in Marion and Citrus counties from Defendants Razbro Real Estate Investments, Inc. ("RREI") and Razbro Corporation ("RC") over a period of more than six years.   Here, Plaintiff sues the companies that sold him the land (i.e., RREI and RC); their principals (i.e, Reza Razavi ("Reza") and Hossein Razavi ("Hossein"));[3] the attorney who closed the transactions (i.e., Paul H. Nessler, Jr.); and 50 unidentified "DOE" defendants.

According to Plaintiff, Reza represented to Plaintiff that he was an attorney working for a multi-billion dollar real estate company in Florida.  Reza explained that this company was the owner of an enormous amount of land and that it would sell subdivided lots to its employees, including Reza, at the company's cost, which was almost half of the fair market value of the land at that time. Reza offered to purchase lots for Plaintiff from the company at the price the company was offering the lots to Reza.  In exchange for Reza locating and purchasing lots at a price below fair market value for Plaintiff, Reza demanded payment in the form of goods, mainly, expensive Persian rugs and jewelry.

From November 19, 2004 to January 13, 2011, Reza provided these services to Plaintiff. During this period, Plaintiff entered into numerous transactions involving the purchase of Florida vacant land with RREI and RC.  For each transaction, Reza would represent certain attributes of the land, as well as price, size, and location.  He would state that he could acquire the land for Plaintiff at a price significantly below the fair market value.   Reza would demand his commission first, in the form of goods, prior to providing Plaintiff with a contract for the sale of the lands.  After receiving his commission, Reza would provide Plaintiff with a contract for the sale of vacant Florida land for Plaintiff's signature.   The contracts were form vacant land contracts by the Florida Association of Realtors.

---

[3] Because of the shared last name, the Court will refer to these two Defendants by their first names.

Throughout the course of their dealings, Plaintiff confided in Reza as a trusted Florida attorney and Reza told Plaintiff that he should completely trust him.  Plaintiff fully trusted Reza and would sign the contracts without first reading them.

The first transaction, which occurred on or about November 16, 2004, is similar to the subsequent transactions set forth in the SAC.  Specifically, with respect to the first transaction Plaintiff alleges that Reza told him, at his (i.e., Plaintiff's) office in California, that he (Reza) had located and purchased a lot worth approximately $70,000 that he would sell to Plaintiff for his purchase price of $30,000.  Reza then demanded and received approximately $15,000 for his services.  On or about November 19, 2004, Reza provided Plaintiff with a contract.  That same day, Plaintiff entered into a contract with RREI for the sale of the land.  (SAC, Exhibit A).

The general scheme described by Plaintiff continued, uneventfully, through 2008.[4] Beginning in 2008, however, the transactions did not go as smoothly.  Specifically, on or about

---

[4]The alleged facts of the subsequent transactions are as follows:

On or about March 10, 2005, Reza told Plaintiff, at Plaintiff's office, that he had located and purchased three lots worth approximately $170,000 that he would sell to Plaintiff for his purchase price of $72,000. He then demanded and received approximately $48,000 in goods for his services in connection with finding and purchasing these three vacant lots.  On or about March 15, 2005, Reza provided Plaintiff with a contract for sale of the land and Plaintiff entered into the contract with RREI for the purchase of these three vacant lots for $72,000. (SAC, Exhibit B).

On or about June 7, 2005, Reza told Plaintiff, at Plaintiff's office, that he had located and purchased a lot worth approximately $180,000 that he would sell to Plaintiff for his purchase price of $68,000.  Reza then demanded and received approximately $22,000 in goods for his services in connection with finding and purchasing the vacant lot.  On or about June 10, 2005, Reza provided Plaintiff with a contract for the sale of land; that same day Plaintiff entered into the contract with Plaintiff for the sale of the vacant land for $68,000.  (SAC, Exhibit C).

On or about July 3, 2005, Reza told Plaintiff, at Plaintiff's office, that he had located and purchased a lot worth approximately $120,000 that he would sell to Plaintiff for his purchase price of $50,000.  He then demanded and received approximately $20,000 in good for his services in connection with finding and purchasing the vacant lot.  On or about July 6, 2005, Reza provided Plaintiff with the contract and Plaintiff entered into a contract with RREI for the sale of the vacant land for $50,000. (SAC, Exhibit D). Also on July 3, 2005, Reza told Plaintiff, at Plaintiff's office that he had located and purchased a lot worth approximately $200,000 that he would sell to Plaintiff for his purchase price of $70,000.  Reza then demanded and received approximately $40,000 in goods for his services in connection with finding and purchasing the lot.  On or about July 6, 2005, Reza provided Plaintiff with the contract, which Plaintiff entered into with RREI for the sale of the vacant land for $70,000. (SAC, Exhibit E).

November 25, 2008, Reza told Plaintiff, at Plaintiff's office, that he had located and purchased two lots worth approximately $300,000 that he would sell to Plaintiff for his purchase price of $90,000.[5]  Reza demanded and received approximately $80,000 from Plaintiff in goods for his services in connection with finding and purchasing the two vacant lots (referred to as "Lot A" and "Lot B").  Reza then provided Plaintiff with a contract for the purchase of the two lots for $90,000.  According to Plaintiff, nine months later, Reza and Nessler provided him with settlement statements reflecting only Lot A for $40,000 and Lot B for $4,000.

On December 11, 2008, Reza and Nessler faxed paperwork from Florida for Plaintiff's signature in California.  They told Plaintiff to sign the documents, get them notarized, and send them back to Nessler to effectuate the transfer or else he would forfeit any and all fees, deposits, and monies paid.  Unbeknownst to Plaintiff, the documents included a "General Release and Indemnification" (hereinafter the "Release") (SAC, Exhibit K).  Title to Lot A was never transferred to Plaintiff; instead, Nessler and Reza provided another contract to Plaintiff for an unknown lot for $1,000, which Plaintiff signed on July 17, 2009.  This contract was between Plaintiff and RC. (SAC, Exhibit L).

---

On or about July 15, 2005, Reza told Plaintiff, at Plaintiff's office, that he had located and purchased a lot worth, approximately $70,000 that he would sell to Plaintiff for his purchase price of $30,000.  Reza then demanded and received approximately $10,000 in good for his services in connection with finding and purchasing the lot.  On or about July 30, 2005, Reza provided Plaintiff with a contract and Plaintiff entered into the contract with RREI for the sale of the vacant land for $30,000. (SAC, Exhibit F).

On or about August 10, 2005, Reza told Plaintiff, at Plaintiff's office, that he had located and purchased a lot worth, approximately $250,000 that he would sell to Plaintiff for his purchase price of $90,000. Reza then demanded and received approximately $80,000 in goods for his services in connection with finding and purchasing the vacant lot.  On or about August 18, 2005, Reza provided Plaintiff with a contract, which Plaintiff entered into with RREI for the sale of the lot for $90,000. (SAC, Exhibit G).

On or about February 2, 2006, Reza told Plaintiff, at Plaintiff's office, that he had located and purchased a piece of vacant land worth, approximately $450,000 that he would sell to Plaintiff for his purchase price of $200,000.  Reza then demanded and received approximately $80,000 in goods for his services in connection with finding and purchasing the vacant land.  On or about February 8, 2006, Reza provided Plaintiff with a contract for the sale of the land; Plaintiff entered into the contract with RREI for the sale of the land for $200,000. (SAC, Exhibit H).

[5] Although the SAC says that Reza offered to sell the lots to Plaintiff for his purchase price of $900,000, the Court assumes this is a typographical error.

Despite the apparent difficulties with these transactions, in January 2011 Plaintiff commenced – what would become – the last transaction.  Specifically, on or about January 2, 2011, Reza told Plaintiff, at Plaintiff's office, that he had located and purchased a lot worth approximately$80,000 that he would sell to Plaintiff for his purchase price of $15,000.  He then demanded and received approximately $45,000 in goods for his services in locating and purchasing the vacant lot.  On or about January 13, 2011, Reza provided Plaintiff a signed contract for the sale of the land of $15,000.  However, prior to the closing date, a Florida real estate agent called Plaintiff and offered to sell him a "practically identical adjacent vacant lot" for less than $4,000.  That realtor also revealed that the lots that were sold to Plaintiff over the years had been purchased by the Razavi Defendants for half (or in some cases a tenth) of the amount in less than 120 days prior to selling to Plaintiff.

Plaintiff incorporates all of these allegations into each of his fifteen counts in the SAC under various theories of tort, contract, quasi-contract and equitable relief.  Plaintiff alleges claims against the Razavi Defendants – i.e., Reza, Hossein, RREI, and RC – for breach of fiduciary duty (Count I); unconscionability (Count III); fraud (Count IV); constructive fraud (Count V); concealment (Count VI); negligent misrepresentation (Count VII); negligence (Count VIII);  common count quasi-contract (Count IX); quantum meruit (Count X); unfair competition (Count XI); breach of written contract (Count XII); book account (Count XIII); and conspiracy (Counts XIV and XV).  Plaintiff alleges claims against Nessler for aiding and abetting breach of fiduciary duty (Count II); unconscionability (Count III); fraud (Count IV); constructive fraud (Count V); concealment (Count VI); negligent misrepresentation (Count VII); negligence (Count VIII); and conspiracy (Count XIV).[6]

---

[6] Plaintiff also alleges claims against the Doe Defendants, but those claims are not at issue in these motions to dismiss.

Plaintiff initially filed suit in California state court on September 1, 2011 and Defendants removed to the United States District Court for the Central District of California. Although properly brought in California, the action ultimately was transferred to the Middle District of Florida pursuant to 28 U.S.C. 1404(a) for the convenience of the parties and in the interests of justice. (Doc. 23). In her transfer Order the district judge found that the following factors favored transfer: (1) defendants Reza and Nessler reside in Florida, and the two corporate defendants are incorporated and headquartered in Florida; (2) the relevant witnesses – real estate agents and land appraisers who would testify about the fair market value of the land at issue – are based in Florida; and (3) most importantly, because plaintiff seeks rescission of the land sale contracts, resolution of the litigation will affect title to nearly a dozen parcels of real property located in Florida.

## II.    APPLICABLE STANDARDS

### A.  Federal Rule of Civil Procedure 8

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While detailed factual allegations are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). The court must view the allegations of the complaint in the light most favorable to the plaintiff, consider the allegations of the complaint as true, and accept all reasonable inferences therefrom. *La Grasta v. First Union*

*Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004).  In considering the sufficiency of the complaint, the court limits its "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *Id.*

The Eleventh Circuit utilizes a two-pronged approach in its application of the holdings in *Ashcroft* and *Twombly*.  First, "eliminate any allegations in the complaint that are merely legal conclusions," and then, "where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 129 S.Ct. at 1949).  In applying these principles, the Court can infer "'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Id.* (quoting *Iqbal*, 129 S.Ct. at 1951-52).

**B.  Federal Rule of Civil Procedure 9(b)**

A number of Plaintiff's claims sound in fraud, and thus, must meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).  "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  "The particularity rule serves an important purpose in fraud actions by alerting defendants to the 'precise misconduct with which they are charged' and protecting defendants 'against spurious charges of immoral and fraudulent behavior.'" *Durham v. Bus. Mgmt. Assocs.,* 847 F.2d 1505, 1511 (11th Cir. 1988) (citation omitted).  Thus, Rule 9(b) "'ensures that the defendant has sufficient information to formulate a defense by putting it on notice of the conduct complained of . . . [and] protects defendants from harm to their goodwill and reputation.'" *Wagner v. First Horizon Pharmaceutical Corp.,* 464 F.3d 1273, 1277 (11th Cir. 2006) (citation omitted) (alterations in *Wagner*).

The requirements of Rule 9(b) may be satisfied by specific allegations as to "'date, time or place.'" (quoting *Durham,* 847 F.2d at 1511). Thus, a complaint satisfies Rule 9(b) if it sets forth: (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud. *Tello v. Dean Witter Reynolds, Inc., 494 F.3d 956, 972 (11th Cir. 2007)*(citation omitted). Notably, "Rule 9(b) does not require a plaintiff to allege specific facts related to the defendant's state of mind when the allegedly fraudulent statements were made[,]" and thus "it is sufficient to plead the who, what, when, where, and how of the allegedly false statements and then allege generally that those statements were made with the requisite intent." *Mizzaro v. Home Depot, Inc*., 544 F.3d 1230, 1237 (11th Cir. 2008).

## III.   DISCUSSION

The Razavi Defendants and Nessler have both filed motions to dismiss. The Court first will address several matters that are applicable to both motions and then will address those arguments specific to each motion.

### A.   Choice of Law

As an initial matter, the Court must determine which State's law governs the substantive issues of this case. A federal court sitting in diversity must apply the choice of law rules of the forum state in which it sits*. Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). However, when a defendant moves successfully for a transfer to a more convenient forum under 28 U.S.C. §1404(a), the transferee court must apply the same state

law that the transferor court would have applied.[7]  *Roofing & Sheet Metal Services, Inc. v. La Quinta*, 689 F.2d 982, 991 (11th Cir. 1982).  "A change of venue under §1404(a) generally should be, with respect to state law, but a change of courtrooms." *Id*. (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 638 (1982).

Because this diversity action was transferred from the Central District of California, this Court must apply the choice of laws principles on which the Central District of California would have relied – i.e. California law.  *Acme Circus Operating Co., Inc. v. Kuperstock*, 711 F.2d 1538, 1540 (11th Cir. 1983).

Defendants point first to the choice of law provision in the land sale contracts for the transactions between Razi and the corporate defendants, providing in pertinent part that "[t]his Contract will be construed under Florida law."[8]  In determining whether to enforce choice of law provisions, California courts analyze whether the chosen jurisdiction has a substantial relationship to the parties or their transaction. *Hatfield v. Halifax PLC*, 564 F.3d 1177, 1182 (9th Cir. 2009).  If so, then California courts will enforce the choice of law provision unless the chosen jurisdiction's law is contrary to California public policy.  *Id*.  Here, Florida unquestionably has a substantial relationship to the transactions and the parties.  As the transferor court recognized: (1) Reza and Nessler reside in Florida and the two corporate defendants are incorporated and headquartered in Florida; (2) all of the transactions involve vacant land in Florida; (3) the majority of relevant witnesses are based in Florida; and (4) if Plaintiff is successful in obtaining rescission of the land sale contracts, it will affect title to nearly a dozen parcels of real property located in Florida.  Further, there is no basis in the record to conclude

---

[7] This rule does not apply in cases in which the transferor court lacked personal jurisdiction of the defendant.  *Roofing & Sheet Metal Services, Inc.*, 689 F.2d at 991-92.  Based on the Court's conclusion that every Count brought against Nessler should be governed by Florida law, the Court need not address Nessler's argument that the California court lacked personal jurisdiction over him.
[8] This provision is contained in paragraph 14 of each of the land sale contracts attached to the SAC.

that application of Florida law to the contracts at issue would contravene California public policy.  Accordingly, the Court will apply the choice of law provision by its terms and will evaluate the counts based on the land sale contracts under Florida law.  *See Am. Home Assur. Co. v. Weaver Aggregate Transp., Inc*, 773 F.Supp. 1317, 1324 (M.D. Fla. 2011).

Plaintiff does not argue that the choice of law provision is invalid.[9]  Instead, he contends that his fraud-based claims for misrepresentation do not arise out of the agreements and, thus, the choice of law provision does not apply to those claims.  Questions regarding the scope of the provision – i.e. whether it includes Plaintiff's claims based on fraud, negligence or quasi-contract – are questions of contract interpretation that in the normal course should be determined pursuant to Florida law.  *Nedlloyd Lines B.V. v. Superior Court*, 834 P.2d 1148, 1154 n. 7 (1992).

"In determining whether a choice of law clause contained in a contract between two parties also governs tort claims between those parties, a court must first examine the scope of the provision."  *Green Leaf Nursery v. E..I. DuPont De Nemours and Co.*, 341 F.3d 1292, 1300 (11th Cir. 2003).  Florida courts read choice of law provisions narrowly.  *Id.*  Claims arising in tort are not ordinarily controlled by a choice of law provision in a contract; rather, they are decided according to the law of the forum state.  *Innovative Strategic Communications, LLC v. Viropharma, Inc.,* No. 8:11-cv-1838-T-33TBM, 2012 WL 3156587, at *3-4 (M.D. Fla. Aug. 3, 2012); *see also Merriman v. Convergent Business Systems, Inc.,* No. 90-30138-LAC, 1993 WL 989418, at *3 (N.D. Fla. June 23, 1993)(choice of law provision in contracts generally will not control the applicable law for tort claims between the contracting parties.)

However, as drafted, every claim in the SAC, except for Plaintiff's claim for quantum meruit, is inextricably and factually tied to the transactions which culminated in the parties'

---

[9] Although Plaintiff asserts in Count II that the land sale contracts are unconscionable, he does not specifically challenge the choice of law provision.

execution of the land sale contracts that contain the choice of law provision.[10]   In each claim, Plaintiff incorporates all of the allegations regarding the transactions, including the land sale agreements.   (SAC at ¶¶30, 35, 40, 44, 53, 63, 69, 77, 83, 89, 92, 99, 102, 107, 110).   Thus, every one of Plaintiff's claims are based, at least in part, on his theory that Defendants sold to Plaintiff vacant land through these transactions for prices above and beyond what they had paid and that Defendants misrepresented the fair market value of the land. (*Id*.).   Plaintiff, himself, relies upon the multiple agreements and the lengthy relationship as a basis for the duty that he claims was breached in Counts I, II, V, and VIII.

Accordingly, the undersigned finds that Florida substantive law should be applied in evaluating Plaintiffs' claims for breach of fiduciary duty (Count I); aiding and abetting breach of fiduciary duty (Count II); unconscionability (Count III); fraud (Count IV); constructive fraud (Count V); concealment (Count VI); negligent misrepresentation (Count VII); negligence (Count VIII); common count (Count IX); breach of contract (Count XII); book account (Count XIII); and conspiracy (Counts XIV and XV).[11]

With respect to Plaintiff's claim for quantum meruit (Count X), the parties agree that it is not governed by the choice of law provision.[12]   Thus, the Court must look to California choice of law principles.   In the absence of a contractual choice of law provision, California follows the "governmental interest" approach for choice-of-law issues. *Reich v. Purcell,* 432 P.2d 727

---

[10] Although Plaintiff's claim for unfair competition (Count XI) is factually tied to the transactions, it will be governed by California law because Plaintiff has alleged a violation of California Business and Professions Code.

[11] Even if the Court found that these claims were not governed by the choice of law provision, application of the governmental interest approach would likely result in application of Florida law to these claims for the same reasons relied upon by the district judge in her transfer Order. (Doc. 23).

[12] In Count X, Plaintiff alleges that in March 2009 he repaired and washed certain Persian rugs for the Razavi Defendants, the Razavi Defendants received the benefit of those services, and retained them without paying for the services.

(1967). Under this approach, the court must examine: (1) whether the two states' laws actually differ; (2) what interest each state has in applying its law; and (3) what comparative impairment will result to each state as a result of the application of the other state's law. *Id.*

Although the elements of a cause of action are essentially the same in both jurisdictions,[13] the statute of limitations in Florida for such a claim is four years, *Fla. Stat.* §95.11(3)(k), while California's statute of limitations is two years. *See Guards Polo Club Holdings Ltd. v. Reid*, 2011 WL 3473378, at *8 (N.D. Cal. Aug. 9, 2011)(citing Cal.Civ.Proc.Code §339(1))(an action for liability not founded upon a written contract, like quantum meruit, is typically subject to a two-year statute of limitations, with the cause of action accruing upon the plaintiff's discovery of the loss or damage).[14] In this Count, Plaintiff alleges that in March 2009 he repaired and washed certain Persian rugs for the Razavi Defendants and that the Razavi Defendants received the benefit of those services without paying for them. Plaintiff filed suit on September 1, 2011. Thus, if Florida law applies, Plaintiff's claim for quantum meruit will not be time barred while it would likely be time barred if California law applies.[15]

Next, the Court must consider the forums' competing interests in applying their own statutes of limitations to the instant claims. "Where the conflict concerns a statute of limitations, the governmental interest approach generally leads California courts to apply California law."

---

[13] Under California law, the elements of quantum meruit are: (1) that plaintiff performed certain services benefitting defendant; (2) their reasonable value; (3) that they were rendered at defendant's request; and (4) that they are unpaid. *Tenet Healthsystem Desert, Inc. v. Fortis Ins. Co., Inc.*, 520 F.Supp.2d 1184, 1196 (C.D. Cal. 2007). Under Florida law, the elements of quantum meruit or a contract implied in law are: (1) plaintiff has conferred a benefit on defendant; (2) defendant has knowledge of the benefit; (3) defendant has accepted or retained the benefit conferred; and (4) the circumstances are such that it would be inequitable for defendant to retain the benefit without paying fair value for it. *Hull & Company, Inc.* v. *Thomas*, 834 So.2d 904, 906-07 (Fla. App. Ct. 2003).

[14] If Plaintiff's quantum meruit claim sounds in fraud, the statute of limitation would likely be three years. *Guards Polo Club Holdings*, 2011 WL 3473378, at *8. Plaintiff, however, has not alleged any delay in discovering his claim for quantum meruit due to fraud or mistake.

[15] Neither party has addressed the statute of limitations and the undersigned cannot determine from the face of the SAC whether Plaintiff's claim would be barred as a matter of law.

*Deutsch v. Turner Cor*p., 324 F.3d 692, 716-717 (9th Cir. Cal. 2003).  As the Ninth Circuit has explained, "California's interest in applying its own law is strongest when its statutes of limitations is shorter than that of the foreign state, because a 'state has a substantial interest in preventing the prosecution in its courts of claims which it deems to be stale.'" *Id*.   Further, the nature of Plaintiff's quantum meruit claim, as pled, further justifies application of California law – a California citizen alleges that a Florida resident failed to pay for services provided in California.  For these reasons, the undersigned concludes that the California court would have applied California substantive law to Plaintiff's claim for quantum meruit (Count XI);thus, this Court will do the same.

### B.  Economic Loss Rule

Defendants argue that Plaintiff's claims for breach of fiduciary duty, unconscionability, fraud, constructive fraud, concealment, negligent misrepresentation, negligence, and conspiracy are barred by the economic loss rule.

The economic loss rule is a judicially created doctrine that sets forth the circumstances under which a tort action is prohibited if the only damages suffered are economic losses." *Indemnity Ins. Co. of N. Am. v. Am. Aviation, Inc.*, 891 So.2d 532, 536 (Fla. 2004).   The economic loss rule bars negligence actions seeking economic damages "in circumstances where the parties are either in contractual privity [and one party seeks to recover damages in tort for matters arising from the contract] or the defendant is a manufacturer or distributor of a product." *Id*. at 534.   Cases that do not fall into either category "should be decided on traditional negligence principles of duty, breach, and proximate cause."  *Id*. at 543.

The rule is designed to prevent the parties from "circumventing the allocation of losses set forth in the contract" by making a claim for economic loss in tort.  *Id*. at 536.  Accordingly,

"a tort action is barred when a defendant has not committed a breach of a duty apart from a breach of contract." *Id.* at 537 (citing *Electronic Sec. Sys. Corp. v. Southern Bell Tel. & Tel. Co.*, 482 So. 2d 518, 519 (Fla. App. Ct. 1986)).  However, "[w]here a contract exists, a tort action will lie for either intentional or negligent acts considered to be independent from the acts that breach the contract."  *HTP, Ltd. V. Lineas Aereas Costarricences, S.A.*, 685 So. 2d 1238, 1239 (Fla. 1996).  If the ability of one party to negotiate fair terms is undermined by the defendant's fraudulent behavior, then a truly independent cause of action lies and is not barred by the economic loss rule.  *Id*. at 1240.  Florida courts have found that the economic loss rule does not bar tort actions based on fraudulent inducement and negligent misrepresentation.  *See Moransais v. Heathman*, 744 So.2d 973 (Fla. 1999); *PK Ventures, Inc. v. Raymond James & Assocs., Inc.*, 690 So.2d 1296 (Fla. 1997); *Allen v. the Stephan Co.*, 784 So.2d 456, 457 (Fla. App. Ct. 2000).

In evaluating the applicability of the economic loss rule, the Court must look at the substance of the claim, rather than the label placed on it by counsel.  *Hotels of Key Largo, Inc.*, 694 So.2d at 77 (quoting *Puff 'N Stuff of Winter Park, Inc. v. Bell*, 683 So.2d 1176, 1179-80 (Fla. App. Ct. 1996)(Harris, J. concurring specially)).  Here, although labeled differently, Plaintiff's claims for breach of fiduciary duty, unconscionability, fraud, constructive fraud, concealment, and conspiracy all appear to be based on the same theory– i.e., that Reza took advantage of his confidential relationship with Plaintiff or breached his duty to Plaintiff by making various fraudulent misrepresentations that induced Plaintiff to enter into the land sale agreements.

Because Plaintiff essentially alleges that his ability to negotiate fair terms was undermined by Reza's fraudulent behavior,  the undersigned finds that, for purposes of the

motion to dismiss, Plaintiff  has stated independent causes of action that are not barred by the economic loss rule.[16]

### C.  Statute of Limitations

Defendants also contend that Plaintiff's claims are barred in part by the statute of limitations.  Under Florida law, the statute of limitations for Count XII (Breach of Written Contract) is five years and for each of the other claims it is four years.  *See* Fla. Stat. §95.11. Plaintiff filed this action on September 1, 2011.  The events at issue in this action occurred between November 2004 and 2011.

Under Florida law, a cause of action accrues or limitations period begins to run when the last element of the cause of action occurs.  Fla. Stat. §95.031.  The Florida Legislature has recognized the delayed discovery doctrine for claims of fraud in which the accrual of the causes of action is delayed until "the time the facts giving rise to the cause of action were discovered or should have been discovered within the exercise of due diligence." *Id*; *see also Davis v. Monahan*, 832 So.2d 708, 709-10 (Fla. 2002).

Here, Plaintiff alleges that he did not learn of any of the alleged wrongdoing until some point between January 13, 2011 and April 5, 2011 when he was contacted by a Florida realtor. SAC at ¶¶26, 28.  These allegations support a finding that the facts giving rise to Plaintiff's fraud-based claims were not discovered until some point in 2011.  Accordingly, the statute of limitations, at least at this early stage of the pleadings, cannot be said to bar Plaintiff's claims for fraud, constructive fraud, concealment, negligent misrepresentation, and conspiracy.

However, the Florida Supreme Court has explained that the delayed discovery rule only applies to a limited number of cases codified by statute such as fraud, products liability,

---

[16] For the same reasons, Defendants' argument that Plaintiff fails to state a plausible claim because his claims are contradicted by the land sale contracts attached to the SAC cannot be resolved at this stage in the case.

professional and medical malpractice, and intentional torts based on abuse, each of which permits postponing accrual where there is delayed discovery. *See Davis* at 710.   While the Florida Supreme Court has recognized one very narrow exception concerning childhood sexual abuse, the Eleventh Circuit, in deciding that the delayed discovery doctrine should not be extended to wrongful death cases, made clear that the Florida Supreme Court's exception was exceedingly narrow and does not justify similar extensions of the delayed discovery rule to instances beyond those for which the Florida Legislature provided by statute.   *Raie v. Cheminova, Inc.,* 336 F.3d 1278, 1281-82 (11th Cir. 2003).   Because the statute codifying the delayed discovery doctrine does not cover breach of fiduciary duty (Count I), aiding and abetting breach of fiduciary duty (Count II), unconscionability (Count III), negligence (Count VIII), common count quasi contract (Count IX), and book account (Count XIII), Plaintiff's claims in these counts predicated on transactions and conduct occurring more than four years prior to the filing of the action on September 1, 2011 – i.e. September 1, 2007 -- are barred by the statute of limitations.[17]

### D.  Release

Next, Defendants argue that Plaintiff's claims are barred, in part, by the General Release and Indemnification agreement attached to the SAC.   While it ultimately could be determined that the Release bars some of Plaintiff's claims, such a finding is premature at this stage.   The enforceability of the Release is at issue in this case.

---

[17]  Four years prior to the filing of this action is September 1, 2007.  Thus, as currently pled, it appears that the statute of limitations would bar all claims except those based on transactions occurring in 2008 and 2011 that are detailed in paragraphs 25-26 of the SAC.

### E.   Razavi Defendant's Motion to Dismiss

#### 1.   Federal Rule of Civil Procedure 9(b)

The Razavi Defendants argue that Plaintiff's claims for fraud, concealment, negligent misrepresentation, and conspiracy should be dismissed because they fail to meet Rule 9(b)'s heightened pleading standard.[18]   All of these are based on the same course of conduct involving alleged misrepresentations of fact.   Because these claims sound in fraud, Rule 9(b)'s heightened pleading standard applies. *Linville v. Ginn Real Estate Cl, LLC*, 697 F.Supp.2d 1302, 1307-09 (M.D. Fla. 2010).[19]

The Eleventh Circuit has held that a complaint does not meet Rule 9(b)'s particularity standard where it is "devoid of specific allegations with respect to each defendant" and instead, merely "lump[s] together all of the defendants in their allegations of fraud." *Ambrosia Coal & Const. Co. v. Pages Morales*, 482 F.3d 1309, 1317 (11th Cir. 2007).   "[I]n a case involving multiple defendants . . . the complaint should inform each defendant of the nature of his alleged participation in the fraud." *Id.* (quoting *Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1380-81 (11th Cir. 1997)).

Here, the SAC alleges a fraudulent scheme perpetuated primarily by Reza in which Plaintiff was fraudulently induced to enter into transactions for the purchase of vacant land in Florida.   In paragraphs 13-29 of the "Factual Allegations" section, which are incorporated into each of the fraud-based counts, Plaintiff alleges details regarding Reza's allegedly fraudulent conduct; but, Plaintiff provides no specific allegations regarding the other Razavi Defendants.

---

[18] Defendants argue that Rule 9(b) also applies to Plaintiff's claim for constructive fraud.  However, unlike actual fraud, constructive fraud does not require a showing of intent or of a misrepresentation or concealment, and thus, it need only meet the pleading requirements of Rule 8. *Linville v. Ginn Real Estate Cl, LLC*, 697 F.Supp.2d 1302, 1309 (M.D. Fla. 2010)

[19] Plaintiff does not dispute the applicability of Rule 9(b) to these claims but instead argues that his allegations are sufficient to meet the heightened standard.

Even if Plaintiff's allegations regarding Reza are pled with sufficient particularity, the fraud-based claims nonetheless run afoul of Rule 9(b) because Plaintiff then purports to lump all of the Razavi Defendants (including Reza) together in each count without differentiating between the separate defendants or specifying which defendant is alleged to have engaged in any specific fraudulent conduct. *Id.* Accordingly, because Plaintiff failed to plead his fraud-based claims with the requisite specificity, Count IV (Fraud), Count VI (Concealment), Count VII (Negligent Misrepresentation), and Counts XIV and XV (Conspiracy) are due to be dismissed as to the Razavi Defendants for failure to meet Rule 9(b)'s standard.

## 2. Claims against Hossein Razavi

Hossein Razavi argues that all claims against him should be dismissed pursuant to Rule 12(b)(6) because Plaintiff fails to assert any factual allegations regarding him. While Plaintiff makes specific allegations about Reza, he fails to make any factual allegations regarding any wrongdoing by Hossein. Instead he makes conclusory allegations that he was engaged in a joint venture with the other Defendants, that he aided and abetted in the alleged conspiracy, and operated as the alter ego of the other Defendants. In response to the motion to dismiss, Plaintiff contends that he has alleged sufficient facts against Hossein based on his allegations of agency/joint venture. Specifically, Plaintiff alleged that

> each of the RAZAVI Defendants, was an agent, servant, employee, and/or joint venture of each of the remaining RAZAVI Defendants, and was at all times acting within the course and scope of such agency, service, employment, and/or joint venture, and each RAZAVI Defendant has ratified, approved, and authorized the acts of each of the remaining RAZAVI Defendant with full knowledge of said facts.

SAC at ¶¶8.

These allegations are nothing more than bare legal conclusions that the Court need not accept as true. While legal conclusions can provide the framework of a complaint, they must be

supported by factual allegations. *Iqbal*, 129 S.Ct. at 1950. In the absence of factual allegations, Plaintiff's allegation that the conduct of the other Razavi defendants should be imputed to Hossein must fail. Accordingly, Plaintiff's claims against Hossein Razavi should also be dismissed without prejudice pursuant to Rule 12(b)(6).

### 3.   Breach of Fiduciary Duty (Count I) and Constructive Fraud (Count V)

In order to plead a claim for breach of fiduciary duty, plaintiff must allege the existence of a fiduciary duty, and the breach of that duty such that it is the proximate cause of the plaintiff's damages. *Gracey v. Eaker*, 837 So.2d 348, 353 (Fla. 200). Likewise, "constructive fraud occurs when a duty under a confidential or fiduciary relationship has been abused or where an unconscionable advantage has been taken." *Amer. Honda Motor Co. v. Motorcycle Info. Network, Inc.*, 390 F.Supp.2d 1170, 1179 (M.D. Fla. 2005). Defendants argue that Plaintiff's claims for breach of fiduciary duty and constructive fraud should be dismissed because Plaintiff has failed to allege facts supporting a fiduciary relationship.

Unless the relationship is formed through the terms of an express agreement – which Plaintiff does not allege – the issue whether a fiduciary relationship exists turns upon the specific facts and circumstances surrounding the relationship of the parties and the transaction in which they were involved. *Capital Bank v. MVB, Inc.*, 644 So.2d 515, 518 (Fla. App. Ct. 1994). Such a relationship is found to exist where 'confidence is reposed by one party and a trust accepted by the other.'" *Hogan v. Provident Life and Acc. Ins. Co.*, 665 F.Supp.2d 1273, 1287 (M.D. Fla. 2009)(quoting Capital Bank, 644 So. 2d at 518); *Abele v. Sawyer*, 747 So.2d 515, 518 (Fla. App. Ct. 1999). Said another way, "[t]o establish a fiduciary relationship, a party must allege some degree of dependency on one side and some degree of undertaking on the other side to advise, counsel, and protect the weaker party." *Taylor Woodrow Homes Florida, Inc. v. 4/46-A Corp.,*

850 So.2d 536, 540  (Fla. App. Ct. 2003).  It follows that a fiduciary relationship does not exist

when the parties are dealing at arm's length because there is no duty imposed on either party to

protect or benefit the other.  *Watkins v. NCNB Nat'l Bank of Fla., N.A.,* 622 So.2d 1063, 1065

(Fla. App. Ct. 1993), review denied, 634 So.2d 629 (Fla. 1994).

Applying these legal principles, Plaintiff has alleged facts supporting a fiduciary

relationship with Reza.  Plaintiff alleges that Reza represented that he was an attorney working

for a multi-billion dollar real estate company in Florida.  SAC at ¶13.  Plaintiff alleges that from

November 19, 2004 to July 13, 2011, Reza provided investment services to him.  SAC at ¶15.

Plaintiff alleges that he fully trusted Reza and would sign the real estate contracts without

reading them.  SAC at ¶16.  Plaintiff further alleges:

> Throughout the course of their dealings, Plaintiff had confided in Defendant Reza Razavi
> as a trusted Florida attorney.  During this time, Defendant Reza Razavi told Plaintiff that
> Plaintiff was like his own brother and that Plaintiff should completely trust him.
> Defendant Reza Razavi would also constantly insist on being appointed Plaintiff's
> daughters' godparent – to care for and act as a trustee for the benefit of Plaintiff's young
> daughters in the event of Plaintiff's death.

SAC at ¶27.

Plaintiff also alleges that Reza would tell him not to worry about anything because he

was Plaintiff's lawyer. SAC at ¶31.  These factual allegations, which the undersigned must take

as true for purposes of the motion to dismiss, are sufficient to support a finding of a fiduciary

relationship between Plaintiff and Reza.  Plaintiff further alleges that Reza breached his fiduciary

duty by making secret profits from the real estate transactions.  Accordingly, Plaintiff has stated

a cause of action for breach of fiduciary duty against Reza.

However, other than bald assertions of agency, joint venture, conspiracy and alter ego,

Plaintiff fails to make any factual allegations to support a fiduciary relationship between Plaintiff

and the other Razavi Defendants.   Accordingly, Count I and Count V should be dismissed

without prejudice as to Hossein, RREI, and RC. Notably, though, as stated above in section IIIC, Plaintiff's claims in Count I based on transactions that occurred prior to September 1, 2007 are barred by the statute of limitations.

### 4. Common Count Quasi-Contract (Count IX)

In count IX of the SAC, Plaintiff attempts to assert a claim for breach of contract implied in law, which is also known as quasi contract or quantum meruit. *American Honda Motor Co., Inc. v. Motorcycle Information Network, Inc.*, 390 F.Supp.2d 1170, 1178 (M.D. Fla. 2005). Under Florida law, the elements of a claim for a quasi-contract are that: (1) the plaintiff has conferred a benefit on the defendant; (2) the defendant has knowledge of the benefit; (3) the defendant has accepted or retained the benefit conferred, and (4) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying fair value for it. *Commerce Partnership 8098 Ltd. Partnership v. Equity Contracting Co., Inc*., 695 So. 2d 383, 386 (Fla. App. Ct. 1997). Damages under the common law claim for breach of contract implied in law are awarded on a theory of unjust enrichment. *American Honda Motor Co., Inc.,* 390 F.Supp.2d at 1178. Because unjust enrichment is an equitable remedy, it is not available where there is an adequate legal remedy. *Id*.

Plaintiff has pled the proper elements to state a claim for unjust enrichment (SAC at ¶¶83-88). Plaintiff, however, expressly incorporates the allegations of the land sale agreements into Count IX, and the benefit allegedly conferred on Defendants was based, at least in part, on these express contracts. It is well-established under Florida law that a claim for unjust enrichment cannot stand if an express contract exists. *Spring Air Intern., LLC v. R.T.G. Furniture Corp.*, No. 8:10-cv-1200-T-33TGW, 2010 WL 4117627, at * 6-7 (M.D. Fla. Oct. 19, 2010).

Further, Plaintiff fails to allege the lack of an adequate legal remedy. *American Honda*, 390 F.Supp. 2d at 1178 (in order to state a claim for unjust enrichment, a party must allege that no adequate legal remedy exists).  The SAC belies any suggestion that an adequate legal remedy is unavailable to Plaintiff.  Indeed, Plaintiff's quasi-contract claim  is predicated on the same set of allegations as the other fourteen counts; and Plaintiff demands damages in the amount of $856,500 – which is the same amount of damages demanded in his claims for breach of fiduciary duty (Count I), aiding and abetting breach of fiduciary duty (Count II), unconscionability (Count III), fraud (Count IV), constructive fraud (Count V), concealment (Count VI), negligent misrepresentation (Count VII), negligence (Count VIII), unfair competition (Count XI),  book account (Count XIII), and conspiracy (Count XV).  Accordingly, Count IX should be dismissed without prejudice.

### 5.   Unfair Competition Law (Count XI)

Plaintiff alleges that the Razavi Defendants performed unlawful, unfair, and fraudulent business acts and practices, and made unfair, deceptive, untrue and misleading advertisements in violation of California Business and Professions Code §17200.

Pursuant to §17200, a plaintiff must allege that: (1) defendant engaged in one of the practices prohibited by the statute; and (2) plaintiff suffered actual injury in fact as a result of defendant's actions. *San Francisco Residence Club, Inc. v. Amado*, 773 F.Supp.2d 822, 833 (N.D. 2011).  A violation may occur when the challenged act or practice is alleged to be either (1) unlawful, (2) unfair, (3) fraudulent, or (4) false advertising.  *Campion v. Old Republic Home Prot. Co., Inc.*, 272 F.R.D. 517, 532 (S.D. Cal. 2011).  California courts have recognized that §17200 is "a broad remedial statute." *Id.*

Accepting the allegations regarding the various misrepresentations as true, the undersigned finds that Plaintiff has stated a claim for a violation of §17200 as to Reza. However, as discussed above, all of the facts upon which this Count rests focus on allegedly fraudulent behavior by Reza.  Other than bald assertions of agency, joint venture, conspiracy and alter ego, Plaintiff fails to make any factual allegations showing how the other Razavi Defendants violated §17200.  Accordingly, Count XI should be dismissed without prejudice as to Hossein, RREI, and RC.[20]

### 6.  Book Account (Count XIII)

An open account is "an unsettled debt arising from items of work and labor, with the expectation of further transactions subject to future settlements and adjustment."  *South Motor Co. of Dade County v. Accountable Const. Co.,* 707 So.2d 909, 912(Fla. App. Ct. 1998).  The elements of a prima facie case are that: (1) a sales contract existed between the creditor and debtor; (2) the amount claimed by the creditor represents either the agreed on sales price or the reasonable value of the goods delivered; and (3) that the goods were actually delivered. *Supermedia LLC v. Pre Enterprises, LLC*, 2010 WL 2734411, at *2 (M.D. Fla. July 8, 2010).  In addition, to state a valid claim on an open account, the claimant must attach an "itemized" copy of the account. *H & H Design Builders, Inc. v. Travelers' Indemnity Company*, 639 So.2d 697, 700 (Fla. Appl Ct. 1994)(citing *Moore v. Boyd*, 62 So.2d 427 (Fla. 1952)); *see also*, Fla.R.Civ.P. Form 1.932, *Open Account* (noting "[a copy of the account showing items, time of accrual of each, and amount of each must be attached).

---

[20] Although not addressed by the parties, the statute of limitations for a §17200 claim is four years.  *See* California Business and Professions Code §17208.  California courts are split as to whether the delayed discovery rule applies to a §17200 claim.  *M&F Fishing, Inc. v. Sea-Pac Ins. Managers, Inc.*, 136 Cal.Rptr.3d 788, 806 (Cal. App. Ct. Jan. 30, 2012)(discussing split in courts of appeal).

Here, although Plaintiff alleges that $863,500 is due on an open book account, he fails to offer any itemized details as to how this number was reached. There are no allegations as to whether the amount claimed represents the combined value of the lands at issue or whether there are set offs for the value of goods exchanged.  Moreover, Plaintiff's claim for open book account is improperly intertwined with the land sale agreements, which are expressly incorporated into Count XIII.  *See Spring Air Intern., LLC v. R.T.G. Furniture Corp.,* No. 8:10-cv-1200-T-33TGW, 2010 WL 4117627, at *6 (M.D. Fla. Oct. 19, 2010)(dismissing claim for open account because allegation of an express contract invalidated a claim for open account).  Accordingly, Count XIII of the SAC should be dismissed without prejudice.

### F.  Paul H. Nessler, Jr.'s Motion to Dismiss

Based on Nessler's alleged participation in this fraudulent vacant land sale scheme, Plaintiff asserts claims against Nessler for aiding and abetting breach of fiduciary duty (Count II), unconscionability (Count III), fraud (Count IV), constructive fraud (Count V), concealment (Count VI), negligent misrepresentation (Count VII), negligence (Count VIII), and conspiracy (Count XIV).  Nessler moves to dismiss all of Plaintiff's claims.  The Court will address each claim in turn.

### 1.  Aiding and Abetting Breach of Fiduciary Duty (Count II)

Under Florida law, the elements of a claim for aiding and abetting breach of fiduciary duty are: (1) a fiduciary duty on the part of the primary wrongdoer; (2) a breach of this fiduciary duty; (3) knowledge of the breach by the alleged aider and abettor, and (4) the aider and abettor's substantial assistance or encouragement of the wrongdoing.  *Hogan v. Provident Life and Acc. Ins. Co.,* 665 F.Supp.2d 1273, 1287 (M.D. Fla. 2009).

Here, as discussed above in the section on Count I, Plaintiff has sufficiently alleged the existence of a fiduciary duty on the part of Reza, as well as Reza's breach of that duty. Further, the allegations regarding Nessler's involvement with Lot A and Lot B and the Release support Plaintiff's assertion that Nessler knew of Reza's breach of fiduciary duty and that Nessler substantially assisted or encouraged Reza's wrongdoing. Plaintiff essentially alleges that Nessler reviewed most of the transactions described in the SAC and drafted documents to effectuate the sales, including the sale of Lot A and Lot B; that Plaintiff entered into the land sale contract with RREI to purchase Lot A and Lot B for $90,000, and paid Reza his $80,000 finder's fee, but that neither lot was transferred to Plaintiff; and that Nessler then attempted to release himself and the Razavi Defendants from any liability resulting from any act.

Taking these facts as true, the undersigned finds that Plaintiff has stated a claim against Nessler for aiding and abetting breach of fiduciary duty. Of course, as discussed above in section IIIC, Plaintiff's claim is barred by the statute of limitations to the extent it is based upon any transactions or conduct occurring prior to September 1, 2007.

### 2. Unconscionability (Count III)

In Count III, Plaintiff alleges that the land sale agreements should be rescinded (or damages awarded) and the Release should not be enforced because they are unconscionable. However, under Florida law, in order to invalidate a contract a party must show that a contract is both procedurally and substantively unconscionable. *Golden v. Mobil Oil Corp.*, 882 F.2d 490, 493 (11th Cir. 1989). Procedural unconscionability relates to the manner in which the contract was entered and it involves consideration of issues such as the relative bargaining power of the parties and their ability to know and understand the disputed contract terms. *Powertel, Inc. v. Bexley*, 743 So.2d 570, 574 (Fla. App. Ct. 1999). In contrast, substantive unconscionability

focuses on the agreement itself and exists when the terms of a contract are unreasonable and unfair. *Id.*   Nessler argues that Plaintiff has failed to sufficiently allege either type of unconscionability

After carefully considering all of the allegations, the undersigned finds that Plaintiff has sufficiently alleged, for purposes of a motion to dismiss, facts to support a finding of both procedural and substantive unconscionability.   Plaintiff essentially alleges that he was taken advantage of by Reza and Nessler; fraudulently induced into entering the land sale contracts that were such bad deals that he would not have entered into them had he not been misled; and tricked into signing the Release purporting to release the Razavi Defendants and Nessler from any liability for these transactions.   Thus, the motion to dismiss should be denied as to Count III except that Plaintiff is barred by the statute of limitations from challenging any land sale agreement entered into prior to September 1, 2007.

### 3.   Fraud (Count IV) and Concealment (Count VI)

To state a cause of action for fraud, a party must allege: (1) a false statement of material fact; (2) known by the defendant to be false at the time it was made; (3) made for the purpose of inducing the plaintiff to act in reliance thereon; and (4) consequent injury by the plaintiff acting in reliance on the representation.   *See Gutter v. Wunker,* 631 So.2d 1117, 1118 (Fla. App. Ct. 1994).   Here, the only allegation Plaintiff makes in Count IV regarding Nessler (other than the factual allegations incorporated by reference) is that he snuck in, by way of facsimile, the Release and did not provide any time for Plaintiff to review the documents or to consult with an attorney. (SAC at ¶¶48, 50).   Plaintiff, however, has not alleged how Nessler's representations or conduct were false, nor has he explained how submitting the Release for Plaintiff's review and signature constitutes fraud.

Likewise, a defendant's knowing concealment or nondisclosure of a material fact may support an action for fraud where there is a duty to disclose. In Count VI, Plaintiff simply alleges that Nessler concealed and suppressed material facts, without alleging specifically what those facts were; nor does he allege on what basis Nessler had a duty to disclose these unspecified material facts. Accordingly, Counts IV and VI should be dismissed without prejudice as to Nessler pursuant to Rule 12(b)(6), but also should be dismissed pursuant to Rule 9(b) because they fail to meet the particularity requirements for fraud claims.

### 4. Constructive Fraud (Count V)

Under Florida law, constructive fraud occurs when a duty under a confidential or fiduciary relationship has been abused or where an unconscionable advantage has been taken. *Levy v. Levy*, 862 SO.2d 48, 53 (Fla. App. Ct. 2003). Here, Plaintiff alleges that Nessler breached his duties as escrow and closing agent by "sneaking in" the Release in a facsimile for Plaintiff's signature which benefited both Nessler and the Razavi Defendants, and by not transferring "lots A and B in accordance with the escrow instructions after Razavi was paid in full." Absent an express agreement, the law will imply from the circumstances that an escrow agent undertakes a legal obligation (1) to know the provision and conditions of the principal agreement concerning the escrowed property, and (2) to exercise reasonable skill and ordinary diligence in holding and delivering possession of the escrowed property in strict accordance with the principals' agreement. *The Florida Bar v. Hines*, 39 So.3d 1196, 1200 (Fla. 2010). In addition, a closing agent generally owes a duty to both contracting parties to supervise the closing in a reasonably prudent manner. *Id.*

Accepting Plaintiff's allegations as true, the undersigned finds that Plaintiff has stated a cause of action against Nessler for constructive fraud. Thus, Count VIII should not be dismissed.

### 5.  Negligent Misrepresentation (Count VII)

Under Florida law, a claim for negligent misrepresentation requires that: (1) there was a misrepresentation of material fact; (2) defendant either knew of the misrepresentation, made the misrepresentation without knowledge of its truth or falsity, or should have known the representation was false; (3) defendant intended to induce another to act on the misrepresentation; and (4) injury resulted to a party acting in justifiable reliance upon the misrepresentation.  *Coral Gables Distrib., Inc. v. Milich*, 992 So.2d 302, 303 (Fla. App. Ct. 2008).  In Count VII, Plaintiff focuses on misrepresentations allegedly made by Reza and fails to even allege that Nessler made any misrepresentations.  Accordingly, Count VII should be dismissed without prejudice as to Nessler.

### 6.  Negligence (Count VIII)

To state a claim for negligence, Plaintiff must allege the existence of a duty, breach of that duty, causation, and damages.  *Clay Elec. Coop., Inc. v. Johnson*, 873 So.2d 1182 (Fla. 2003).  Nessler argues that Plaintiff has failed to allege a breach of any duty owed to Plaintiff.

Plaintiff alleges that Nessler "had a heightened duty of care to act as a reasonably prudent licensed attorney, escrow agent, and closing agent."  (SAC at ¶78).  There is no allegation in the SAC that Nessler acted as Plaintiff's attorney or Nessler represented only his interests.[21]  However, as an escrow agent and closing agent, Nessler owed a fiduciary duty to both contracting parties.  *The Florida Bar v. Hines*, 39 So.3d 1196, 1200 (Fla. 2010).

---

[21] Indeed, Plaintiff attached the February 10, 2006 Closing Agreement as Exhibit H to the SAC which clearly provides that Nessler did not represent Plaintiff in that transaction.  Paragraph 5 states: "[T]he office of Paul H. Nessler, Jr., P.A., Attorney at Law, is involved only in the preparation of documents necessary to transfer and/or encumber title, and/or for issuance of a title insurance policy in the referenced transaction, and that said firm has not been retained to, nor does it represent, the undersigned in this transaction.  The parties have had the opportunity to consult with independent counsel of their choice in this transaction, and they either have their own legal counsel to advise and represent them, or have elected not to be represented by an attorney in this transaction." The undersigned notes, but did not consider, the eight other Closing Agreements, with identical language, which were attached to Nessler's motion to dismiss.

Here, Plaintiff alleges that Nessler breached his duty of care by sending the Release buried in paperwork to Plaintiff – without disclosing its existence and requiring Plaintiff to return the paperwork, including the Release, signed and notarized within a few hours – where the Release purports to release and indemnify Nessler and the other party to the contracts.   These allegations are sufficient to state a cause of action for negligence.   Thus, the motion to dismiss should be denied as to Count VIII except that Plaintiff is barred from claiming negligence arising out of any events or transactions occurring prior to September 1, 2007.

### 7.  Conspiracy (Count XIV)

In Florida, the elements of a civil conspiracy are: (a) a conspiracy between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts performed pursuant to the conspiracy.   *Charles v. Fla. Foreclosure Placement Ctrl, LLC*, 988 So.2d 1157, 1159-60 (Fla. App. Ct. 2008).   Conspiracy, however, is not a separate or independent tort but rather a vehicle for imputing the tortious conduct of one co-conspirator to another to establish joint and several liability.   *Hoch v. Rissman, Weisberg, Barrett*, 742 So.2d 451, 460 (Fla. App. Ct. 1999).

Here, Plaintiff incorporates the earlier allegations and then simply states, "RAZAVI Defendants and Paul H. Nessler, Jr., conspired to deprive Plaintiff out of $165,000 of the $170,000 that Plaintiff had paid RAZAVI Defendants in connection with lots A and B." (SAC, ¶¶107, 108).   Plaintiff has failed to allege what underlying wrong Nessler and the Razavi Defendants conspired to commit.   As discussed above, the undersigned has found that Plaintiff failed to state a claim against Nessler as to the majority of the fraud-based claims.

## IV.     CONCLUSION

In sum, the undersigned recommends that:

(1) All claims brought against Hossein Razavi be dismissed without prejudice;

(2) To the extent Plaintiff's claims for breach of fiduciary duty (Count I), aiding and abetting breach of fiduciary duty (Count II), unconscionability (Count III), negligence (Count VIII), common count quasi contract (Count IX), and book account (Count XIII) are predicated on transactions and conduct occurring before September 1, 2007, such claims be barred by the statute of limitations;

(3) Plaintiff's claims of breach of fiduciary duty (Count I) and constructive fraud (Count V) be dismissed without prejudice as to Hossein Razavi, Razbro Real Estate Investments, Inc., and Razbro Corporation;

(4) Plaintiff's claims of fraud (Count IV), concealment (Count VI), negligent misrepresentation (Count VII ) and conspiracy (Counts XIV and XV I) be dismissed without prejudice;

(5) Plaintiff's claim for common count quasi-contract (Count IX) be dismissed without prejudice;

(6) Plaintiff's claim for unfair competition (Count XI) be dismissed without prejudice as to Hossein Razavi, Razbro Real Estate Investments, Inc., and Razbro Corporation; and

(7) Plaintiff's claim for book account (Count XIII) be dismissed without prejudice.

## V.     RECOMMENDATION

For the foregoing reasons it is respectfully **RECOMMENDED** that Defendant, Paul H. Nessler, Jr.'s Motion to Dismiss Second Amended Complaint (Doc. 56) and the Motion to

Dismiss Plaintiff's Second Amended Complaint filed by the Razavi Defendants (Doc. 57) be

**GRANTED** in part and **DENIED** in part as stated in this Report and Recommendation.

Recommended in Ocala, Florida on December 13, 2012.

PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy